UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Nancy Gembitsky


       v.                              Civil No. 09-cv-140-JM

Thomas F. DeSteph,  et al.



                      O R D E R

       Plaintiff brought this action to recover $100,000.00 owed to
her by defendants on a promissory note that was due and payable
on or before January 10, 2008.  She has asserted statutory claims
based on violations of federal and state securities fraud, 15
U.S.C. § 78(b), SEC Rule 10-b promulgated thereunder, and New
Hampshire Rev. Stat. Ann. ("RSA") 421-B:3, 5 & 25, and the
Connecticut Unfair Trade Practices Act, Conn. Gen. St. § 42-
110(a) ("CUTPA").  She has also asserted common law claims based
on breach of contract, fraud, conversion, constructive trust and
negligent misrepresentation.  All claims arise out of the same
operative facts, giving this court jurisdiction to consider both
her federal and state law claims.  See 28 U.S.C. § 1331 (federal
question jurisdiction) & § 1367(a) (supplemental jurisdiction).

       Immediately upon commencing this action, plaintiff moved for
a temporary restraining order and prejudgment attachment.  See

Pl.'s Ex Parte Mot. for TRO, Add. Ex Parte Prelim. Relief and
Prelim. Inj. (document no. 4) and Pl.'s Ex Parte Pet. for
Prejudgment Attachment (document no. 5).  Plaintiff sought to
attach various assets of defendants to secure payment of any
judgment obtained in this action.  See Fed. R. Civ. P. 64
(allowing prejudgment attachment according to state law); RSA
511–A:8, I (West 1997) (ex parte prejudgment attachment).  On
April 27, 2009, plaintiff got the requested TRO, and the matter
was set for hearing pursuant to Fed. R. Civ. P. 65(b)(3).  See
Document nos. 6 & 7.  On April 29, 2009, a hearing was held, at
which the individual defendant, Thomas DeSteph ("DeSteph"),
appeared pro se, but the other defendants were not represented.
After carefully considering the facts and arguments presented, as
explained further below, plaintiff's motion for preliminary
injunctive relief (document no. 4) is granted.

Discussion

**1.  Standard of Review**

As the moving party, plaintiff bears the burden of
demonstrating that an injunction is needed to prevent irreparable
harm and to preserve the status quo, to enable a meaningful
disposition of her claims.  See CMM Cable Rep. v. Ocean Coast

2

<u>Props.</u>, 48 F.3d 618, 620–21 (1st Cir. 1995) (enjoining certain conduct permits the court "more effectively to remedy discerned wrongs").  Irreparable harm occurs when the challenged conduct causes some harm that cannot be adequately redressed with traditional legal or equitable remedies following a trial.  <u>See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3d Cir. 1994) (explaining irreparable harm).  To carry this burden, plaintiff must demonstrate:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  <u>Esso Standard Oil Co. v. Monroig–Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006) (internal quote omitted); <u>see</u> <u>also</u> <u>Ross–Simons of Warwick, Inc.</u>, 102 F.3d at 18–19 (explaining the burden of proof for a preliminary injunction).

If plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle

curiosity," <u>id.</u>, insufficient to carry the weight of this extraordinary relief on their own.  <u>See</u> <u>Esso Standard Oil Co.</u>, 445 F.3d at 18 (the "<u>sine</u> <u>qua</u> <u>non</u> . . . is likelihood of success on the merits") (internal quotation omitted)).  Although success on the merits is critical, a preliminary injunction will not issue unless plaintiff will be irreparably harmed without the requested relief.  <u>See</u> <u>Ross-Simons of Warwick, Inc.</u>, 102 F.3d at 19 ("the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem").  As explained below, I find the current record demonstrates that plaintiff has shown a likelihood of success on the merits of her claims and will suffer irreparable harm without an injunction, justifying the relief sought.

**2.  Plaintiff's Fraud Claim**

Underlying all eight counts asserted here is the same story of fraud.  Plaintiff demonstrated in her verified motion for injunctive relief and by evidence proffered at the hearing how she came to know DeSteph and agreed to give him $100,000 to invest on her behalf.  Although the pair had a relationship which lasted several months, and the evidence conflicted about the personal and professional boundaries of that relationship, for purposes of the

relief sought now, only the following facts are relevant.

### a.   Background

Plaintiff inherited some money after her mother's death. She was discussing her savings with a friend at work who recommended plaintiff contact DeSteph.  DeSteph held himself out as an investment advisor, financial planner and insurance broker. He is the sole proprietor of an investment firm doing business as the second defendant here, The DeSteph Agency.  Although the facts were not clear about the third defendant, TDA Advantage Trust ("TDA"), based on the current record, it appears DeSteph used that entity to lure plaintiff into giving him the contested $100,000.  There were no documents evidencing any individuals involved with or working for either The DeSteph Agency or TDA, other than DeSteph, who operated his business out of his home in Jaffrey, New Hampshire.[1]

---

[1]Illustrative of DeSteph's deceptive scheme is the home web page for The DeSteph Agency, which claims to "have the best management people, highest-rated insurance companies, a professional support staff, and an enthusiastic sales team," and claimed to "enjoy a long-standing reputation for the finest products and services available."  Pl.'s Ex. 2.  At the hearing, DeSteph testified that he was always the only person who worked at The DeSteph Agency, which is no longer operating.  Further contradicting the representations of his web page, DeSteph also explained he had only an 11th grade education and testified that rendered him vulnerable to the manipulative ways of plaintiff, whom he described as wealthy, sophisticated and well-educated.

Plaintiff first met DeSteph over dinner in October 2002 to discuss her investment needs.  DeSteph presented himself as a principal at The DeSteph Agency, which he claimed brokered investment vehicles such as tax deferred annuities, IRAs, long term care insurance policies and life insurance to "the most discerning clients," providing them with "the most up-to-date benefits, interest rates, and income options available."  Pl.'s Ex. 2.  After that meeting, plaintiff agreed to have DeSteph come to her home to review her financial records and help her plan how to invest for her retirement.  Plaintiff agreed to roll over her 401(k) accounts into annuities issued by AIG and Allianz, which DeSteph arranged for her to do on December 5, 2002.  Since then plaintiff has received monthly statements from both AIG and Allianz and so believes these two transactions were legitimate.

Plaintiff also discussed her $100,000 inheritance with DeSteph.  DeSteph recommended plaintiff invest the money in an "invitation only" investment opportunity, which would yield 6.15% annually, with a monthly payout of $512.50.[2]  Plaintiff was considering putting the money into a CD that would earn 5%

---

[2]Although plaintiff testified that she was told she would earn 6.15% monthly, the numbers suggest that the yield was annual, and that the $512.50 represented the monthly earnings on the annual yield based on $100,000 investment.

annually, so this more lucrative opportunity was intriguing; however, her repeated requests for information about the investment fund went unanswered, and she never got a prospectus or any other documentation explaining the fund or its operations. DeSteph told plaintiff the fund was a limited partnership, which meant she could invest into the fund but had limited authority over the fund's investment decisions.  This explanation satisfied plaintiff apparently, because on January 13, 2003, she wrote a check for $100,000 to the TDA Advantage Trust.  See Pl.'s Ex. 1 (copy of the check).  DeSteph deposited the check into the TDA Advantage Trust account at Granite Bank, in Keene, New Hampshire. See id.

Plaintiff continued to ask DeSteph for documentation about the trust fund and her investment in it, but he continued to ignore her requests.  Plaintiff eventually asked for her money back, but DeSteph explained that it was locked in the trust fund for five years.  Plaintiff persisted with her request for some documentation of the transaction, which ultimately resulted in DeSteph issuing her a promissory note on March 15, 2003.  See id. Pursuant to the terms of the promissory note, TDA promised to pay plaintiff $412.50 per month, minus a $12 monthly service charge,

for 60 months.  At the end of the 60 months, plaintiff was to recoup her initial $100,000 investment plus a prorated share in all profits the fund earned, less the amount of interest paid at that time.  The note promised that TDA would "make one final payment for the entire balance owed on or before 1/10/2008 unless [plaintiff] reinvests in the TDA Advantage Trust Club in increments of five-year agreements."  <u>Id.</u>  The promissory note was notarized in Peterborough, New Hampshire on March 10, 2003.

Plaintiff never received a monthly installment payment. When she inquired about this, DeSteph told her that profits were being reinvested in the fund.  Plaintiff asked her accountant about that practice and he confirmed that it was not unusual for a fund to reinvest profits rather than paying them out, so plaintiff believed her money was safe for the five year term she had invested it.  On January 10, 2008, plaintiff did not receive a check for the balance due.  She began trying to reach DeSteph and succeeded, finally, in July 2008.  At that time DeSteph asked her to forbear pursuing any legal action against him, because that would cause him to file for bankruptcy and she would never see the money.  He assured her payment was coming.  As of the date plaintiff commenced this action, April 22, 2009, she had not

8

received any money from her initial $100,000 investment.

At the hearing, DeSteph had no explanation for what happened to plaintiff's $100,000 investment in TDA.  Instead, he claimed the money had been gifted to him for his personal use, to be spent as he saw fit and repaid if and when he felt in a position to do so.  He testified that after the pair had broken off their personal relationship in late January or early February 2003, plaintiff changed her mind about the investment and told him to use it for his personal needs.  DeSteph's explanation for why he executed the promissory note after plaintiff allegedly gifted him the money was muddled at best, if not deliberately misleading. DeSteph proffered a pathetic story of being the victim of a sordid affair and now a penniless father of two young daughters. His story was neither credible nor persuasive, but most significantly, it is completely irrelevant to the financial obligations he committed himself to when he deposited plaintiff's $100,000 check into the TDA trust bank account and issued the promissory note documenting the repayment terms.

Because DeSteph has had unfettered control over plaintiff's $100,000 since January 2003 and because he now claims he has no money to repay her, plaintiff seeks to attach certain assets and

to enjoin the defendants from encumbering assets in an effort to further avoid paying her, in order for her to obtain meaningful relief upon full adjudication of this matter.

> b.  Prejudgment Attachment

Pre-judgment attachments are available to secure satisfaction of judgments "under the circumstances and in the manner provided by the law of the state where the district court is held."  Fed. R. Civ. P. 64.  Under New Hampshire law, pre-judgment attachments generally may only be issued after notice and an opportunity to be heard have been given to the defendant. See N.H. Rev. Stat. Ann. ("RSA") 511-A:1 and A:2.[3]  At the hearing:

> the burden shall be upon the plaintiff to show that there is a reasonable likelihood that the plaintiff will recover judgment . . . on any amount equal to or greater than the amount of the attachment.  Upon satisfying said burden, the plaintiff shall be entitled to the attachment unless the defendant establishes to the satisfaction of the court that his assets

---

[3]Under the exceptional circumstances plaintiff presented in her verified TRO motion and attachment petition, she was granted permission to attach certain assets of defendant prior to giving him notice.  See document no. 7; see also RSA 511-A:8, I.  Once defendant was notified of the attachment, pursuant to New Hampshire law he was given an opportunity to object and request a hearing, both of which defendant did.  See RSA 511-A:2 & 3. Accordingly, the ex parte attachment which issued pursuant to RSA 511-A:8 shall be analyzed under RSA 511-A:3.

will be sufficient to satisfy such judgment . . ..
RSA 511–A:3.  The plaintiff's burden of proof to justify an
attachment is greater than the preponderance of evidence required
to prevail in a civil action.  See Diane Holly Corp. v. Bruno &
Stillman Yacht Co., 559 F. Supp. 559, 561 (D.N.H. 1983)
(explaining how New Hampshire's special constitutional protection
of property requires prejudgment attachments to be supported by a
strong preliminary showing of probable success).  "[M]ore than a
favorable chance of success must be shown.. . . [P]laintiff . . .
must make a strong preliminary showing that he or she will
ultimately prevail on the merits and obtain judgment in the
requested amount and that this showing must be established by
proof greater than proof by a mere preponderance of the
evidence." Id.  Only if plaintiff satisfies this higher burden
of showing a strong likelihood of success does the burden shift
to defendant to demonstrate it has the ability to satisfy the
potential judgment against it.  See id. (affirming order denying
attachment without considering defendant's ability to pay because
plaintiff had not made the requisite showing); see also RSA 511–
A:3.

c.  Plaintiff's Showing

At the hearing plaintiff met her burden of proving, by clear and convincing evidence, that she is likely to succeed on her claims, because the demonstrated fraud gives rise to every count asserted in her complaint.  The documents unequivocally establish that DeSteph, on behalf of TDA, took $100,000 from plaintiff and promised to repay her the principal plus interest and her prorated profits, by January 10, 2008.  The undisputed evidence showed that plaintiff made that payment to DeSteph because he deceived her into believing the TDA Advantage Trust was a legitimate investment vehicle.[4]  She justifiably relied on his representations that he was a reputable financial planner, based on her colleague's recommendation, his web page marketing, and his effective brokering of her 401(k) roll-over accounts to AIG and Allianz.  The evidence was clear and convincing that

---

[4]The parties did dispute what plaintiff knew about the purposes of the trust and who would run its operations, but in either version of the events plaintiff clearly believed the TDA Advantage Trust was a legitimate investment vehicle.  DeSteph's claim that she subsequently decided he should use her investment for his personal needs does not alter the fact that she initially agreed to give DeSteph the money because she was looking for a good investment opportunity for her inheritance and was deceived into believing her would provide that for her.  In any event, the claimed "gift" is wholly undermined by the promissory note, the authenticity and accuracy of which was not disputed.

plaintiff entrusted DeSteph with her $100,000 to her detriment, because she has received none of the promised return on her investment nor any of her principal back from defendants.

Plaintiff has also established that she is likely to suffer irreparable harm without the requested injunctive relief.  Aside from the fact that she has received none of the promised payments, DeSteph admitted he has little or no assets with which to repay her.  Indeed, DeSteph's argument against the attachment was that he had no money to pay his debts or ordinary expenses. DeSteph stated that he had already defaulted on his mortgage payment and that he did not sufficient funds to buy groceries for his two young daughters.  While I found neither claim persuasive because the TRO and pre-notice attachment specifically excluded funds needed to pay his mortgage and other ordinary expenses, DeSteph's statement is good evidence that he does not have sufficient assets to satisfy any judgment plaintiff may obtain here.  See RSA 511-A:3 (shifting the burden to defendant once plaintiff establishes her likelihood of success to show his assets will satisfy such judgment).

Finally, the balance of hardships and public interest both favor granting the requested relief.  Plaintiff is entitled to

13

pursue those avenues of relief which could secure any judgment she may win, and any hardship it may cause DeSteph is outweighed by the potential loss she may sustain and the actual loss of use of those funds she has already endured.  If the injunction does not issue, based on his demonstrated inclination to deceive and his admitted paucity of funds, DeSteph is unlikely to be in a position to pay plaintiff the $100,000 apparently due her.  If the injunction does issue, the hardship to DeSteph will be minimal compared to the hardship he has caused plaintiff, in particular because he will continue to have access to funds needed to pay his primary mortgage and ordinary expenses.  Public policy certainly favors catching, preventing and deterring fraudulent business practices.  If a more fully developed record proves that plaintiff's preliminary showing was wrong, defendants will have lost nothing more than a temporary loss of use of their assets.

   **3.  The Preliminary Injunction and Prejudgment Attachment**

   Plaintiff has met her burden of proof required to justify both a prejudgment attachment and a preliminary injunction.  <u>See</u> RSA 511-A:3, 4; <u>see</u> <u>also</u> Fed. R. Civ. P. 64 & 65.  Accordingly, plaintiff is entitled to the following relief:

A.   Defendants DeSteph, The DeSteph Agency and TDA, and their officers, agents, servants, employees, attorneys are enjoined and prohibited from selling, transferring, pledging as collateral, hypothecating, or otherwise granting any legal or equitable interest or security interest in:

> (i) any of their vehicles, boats or other items of real or personal propety with a value greater than $500;
>
> (ii) any of their bank accounts, certificates of deposit, insurance policies, annuities, brokerage accounts, stocks, mutual funds, exchange trade funds and other financial instruments and securities; and
>
> (iii) any partial (or complete) interest in any similar property.

B.   Notwithstanding the above, DeSteph may continue to use his financial assets for the sole purposes of

> (i) keeping his present first mortgage current; and
>
> (ii) paying for other ordinary expenses.

C.   The permission to attach granted to plaintiff on April 27, 2009 (document no. 6) continues in effect until final judgment is entered or other circumstances arise which justify removal of the attachment.  The previously authorized attachments which hereby are ordered to continue in effect include:

> (i) real estate in Cheshire County;
>
> (ii) bank account in People's United Bank, d/b/a Ocean Bank; and
>
> (iii) personal property set forth in the Petition to Attach and identified herein,

15

<u>supra</u> at A.

    D.  It is assumed that defendants have already complied with this court's April 27, 2009 order (document no. 6) requiring defendants to provide plaintiff's attorney with the following information:

        (i) the identity, value and location of all bank accounts, certificates of deposits, insurance policies, annuities, brokerage accounts, stocks, mutual funds, exchange traded funds and other financial instruments and securities in which any of the defendants has a legal or beneficial interest;

        (ii) copies of the most recent statements for all such accounts;

        (iii) the identity and location of all real estate owned, directly or indirectly, by any of the defendants; and

        (iv) the identity of trusts, wills or other instruments in which any of the defendants are presently named as beneficiaries or trustees, regardless of whether their rights are presently vested or enforceable.

If defendants have not complied with this order, they are required to do so within ten (10) days of the date of this order.

<u>Conclusion</u>

For the reasons set forth above, plaintiff's verified motion for preliminary injunction (document no. 4) is granted.

**SO ORDERED.**


_____
James R. Muirhead
United States Magistrate Judge


Date:    May 7, 2009

cc:      Andrew Schulman, Esq.
         Thomas F. DeSteph, pro se